## COLE *v.* WARNER.

*(Jackson.* July 28, 1893.)

BAIL-BOND. *Creates no lien upon obligor's lands.*

The execution of a bail-bond does not create a lien on the lands of the obligor.

Cases cited and distinguished: State *v.* Miller, 11 Lea, 620; State v. Winn, 3 Sneed, 393; Pugh *v.* State, 2 Head, 228.

FROM CARROLL.

Appeal from Chancery Court of Carroll County. A. G. HAWKINS, Ch.

H. C. TOWNS, CARUTHERS & MALLORY for Cole.

Jo. R. & H. N. HAWKINS for Warner.

McALISTER, J. The only question presented for decision in this case is whether the execution of a bail-bond creates a lien on the land of the obligors. The question arises in a contest between the mortgagee of the land and a purchaser of the land at a judicial sale had in pursuance of a judgment upon the forfeited bail-bond.

The facts presenting the question are these, to wit: W. E. Warner was the owner of a lot of ground in the town of Trezevant, in Carroll County. On April 13, 1886, the Sheriff of Carroll County arrested one Luke Warner, upon a capias issued from the Circuit Court of said county, for the offense of malicious shooting, and upon said day the Sheriff accepted from the prisoner, the said Luke Warner, a bail-bond in the sum of five hundred dollars, with W. E. Warner, the owner of this land, as surety, conditioned for the appearance of said Luke Warner at the next term of the Circuit Court of said county to answer for said offense. The bond was duly returned by the Sheriff to the next succeeding term of said Court, and on May 5, 1886, during said first term, a forfeiture for non-appearance was taken against the said Luke Warner and his surety, the said W. E. Warner, on said bond, for the sum of five hundred dollars.

At the September term of said Court, in 1888, said judgment *nisi* was made final. On June 22, 1889, an execution issued on said judgment, which came to the hands of the Sheriff, who, on the —— day of ————, 1889, levied the same on this land. The land was sold on June 5, 1890, for the satisfaction of said judgment, and the same was struck off to P. A. Hollinguest, who afterwards directed that the deed be made to the complainant, W. H. Galloway, which was accordingly done. It was in this way that Galloway acquired his title to this

land, which he now claims is superior to that of Cook & Bernheim. The latter firm acquired their title in the manner following: It appears from the record that after the execution of the bail-bond by Luke and W. E. Warner, which it will be remembered was on April 13, 1886, the said W. E. Warner and wife, on April 29, 1886, executed to J. T. Cole a mortgage on said land to secure an indebtedness of $250 due to Cole. At a subsequent date Cole transferred said indebtedness to Cook & Bernheim, merchants of New York. It further appears that on May 28, 1891, Cole and Cook & Bernheim filed their bill to foreclose the mortgage in the Chancery Court at Huntingdon against Warner and wife.

At the February term of said Court, 1892, the said Galloway presented a petition in said cause, in which he set forth his title to said land by virtue of the Sheriff's deed made to him under the forfeiture proceedings in the Circuit Court of Carroll County against Luke Warner and his surety, the said W. E. Warner. The Chancellor ordered that said petition be filed in the nature of an original bill, and that the same be consolidated with the case of *J. T. Cole et als.* v. *W. E. Warner et als.*

On the hearing the Chancellor decreed that the State, by virtue of the execution to it of the bail-bond, acquired a lien upon said land, and that W. H. Galloway, by virtue of the Circuit Court proceedings, sale, and Sheriff's deed, acquired a

superior right to said land, and was entitled to
the possession of it.    Cook & Bernheim appealed,
and have assigned errors.

The validity of the judgment pronounced by
the Circuit Court on the forfeited bail-bond is
challenged upon several grounds, to wit: First,
because judgment final was taken against all the
parties to said bond without dismissing as to Luke
Warner, or causing two writs of *sci. fa.* to be re-
turned as to him "not found."    Complainant cites
§ 6009 Code (M. & V.), viz.: "When two *sci. fas.*
have been returned not found by the proper officer
of the county in which the undertaking was en-
tered into, such returns are equivalent to a per-
sonal service, and judgment may be made absolute."
3 Cold., 91;  6 Lea, 199.

It is next objected that the lien of the judg-
ment, if valid, was lost by the failure to take out
execution and sell the lot within twelve months
from its rendition.    Code, § 3694.

It is unnecessary to notice the infirmities pointed
out in the Circuit Court proceedings, since it was
stated in argument by counsel for complainant,
Galloway, that he did not rest his case upon the
lien acquired by the judgment, levy, and sale of
the property, but upon the lien in favor of the
State that attaches to the execution of a bail-bond.
No statute of this State, nor any adjudication of
this Court sustaining the claim to such a lien, has
been cited by counsel in argument, nor have we
been able to find such authority for it.    It is well

settled that a recognizance entered into in a Court of record creates a direct and specific lien upon the lands owned by the cognizors at the time of its acknowledgment, and situated in the county where the recognizance is taken. *State* v. *Miller,* 11 Lea, 620; *State* v. *Winn,* 3 Sneed, 393; *Pugh* v. *State,* 2 Head, 228.

There is no room, however, for the application of the rule governing the recognizance to the case of the ordinary bail-bond, for there is a marked difference between the two kinds of undertaking. The principal difference between the two forms of obligation lies in the fact that a recognizance is a matter of record in the nature of a conditional judgment, and is proceeded upon by *scire facias,* while a bond is but an evidence of debt, for the recovery of which an action must be brought. A bail-bond is taken out of Court in vacation, and a recognizance is taken in open Court, in which the cognizors confess judgment, to be levied on their property in case the principal makes default in his appearance.

The policy of our registration laws negatives the idea that a lien could arise by the mere execution of a bail-bond. Instruments conveying land, or fixing liens on land, must be recorded in the county where the land lies, unless it lies partly in two or more counties, and then it must be registered in one or the other. If the instrument embraces several tracts lying in different counties, it must be recorded in each county. Code (M. & V.), § 2843.

Judgments and decrees of Courts of record rendered in the county of the debtor's residence constitute a lien upon the debtor's land from date of rendition, the lien to be enforced within twelve months thereafter. Code (M. & V.), § 3694. If rendered in any other county than that of the debtor's residence, a copy of the judgment must be recorded in the county where the debtor resides, in order for the lien of the judgment to attach. Code (M. & V.), § 3695. "All these provisions," says Judge Freeman, in *State* v. *Miller*, 11 Lea, 620, "indicate the policy of our State to be that liens and charges on lands shall be evidenced by a record at the locality where they would most naturally be expected to be found," etc.

It would be an anomaly in the law if a Sheriff or Constable could take a bail-bond and carry it around in his pocket for months, with no knowledge or means of knowledge on the part of the public of its existence, and thus create an ambulatory lien which would override all subsequent conveyances. We hold that no such lien exists. It follows that complainant is entitled to a foreclosure of the mortgage on the lot in controversy, and that the decree of the Chancellor must be reversed.