## In re COLONIAL BAKERY, INC., Debtor.

**Bankruptcy No. 8600824.**

United States Bankruptcy Court, D. Rhode Island.

Nov. 30, 1989.

Keven A. McKenna, McKenna, Greenwood & Feinstein, Providence, R.I., for Colonial Bakery, Inc.

S. Christopher Stowe, Jr., Warwick, R.I., for Leo Martel.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on October 25, 1989, on the debtor, Colonial Bakery's, Objection to Claim Number 8 of Leo Martel, d/b/a Seaboard Flour, in the amount of $11,550.68. The facts below constitute the basis for the debtor's objection to this claim.

Colonial Bakery has been under the protection of Chapter 11 since December 3, 1986, and on March 17, 1987, Martel filed his proof of claim, without supporting documentation. This claim arises out of a vendee-vendor relationship between the parties which continued from the 1960's until September 1982, when Martel sold his business, Seaboard Flour, to STW Nutmeg, Inc. The accounts receivable of Seaboard Flour were not included in the sale to Nutmeg. (*See* Creditor's Exhibit 2.) During

the trial, Leo Martel, the principal of Seaboard Flour during the time relevant to this dispute, described Seaboard's almost mystical billing and record keeping procedures as follows: when a delivery was made, Martel required the delivery slip to be signed as an acknowledgement of the product purchase. This slip was then retained by Martel (without supplying the purchaser with a copy) until the bill was paid. Payments were always applied to the oldest bills first. Martel says he kept a "running ledger" of each client's outstanding balance, and that he would periodically furnish to Colonial a statement of the amount then due. Curiously, Martel claims that he did not retain copies of these statements but rather, relied exclusively on the so-called "running ledger," which he also failed to produce. We have heard no satisfactory explanation as to why these important documents were not available. To substantiate his claim in the amount of $11,550.68, Martel submitted numerous delivery slips and shipping memoranda which he claims represent Colonial's unpaid receivables from June 2, 1982 through September 1, 1982, just days prior to the sale of Seaboard Flour to STW Nutmeg, Inc. During his testimony, Mr. Martel often referred to his bookkeeper and his accountant, both of whom were familiar with the "record-keeping" of the business, and who had routinely assisted him in maintaining the running ledger for the Colonial account. However, when asked by the Court whether these individuals would testify, he responded that he "didn't want to bother Terry (the bookkeeper) because her husband is sick in Florida." No reason was given for not calling the accountant as a witness. In addition to these two important (non)witnesses, Martel also referred frequently to John Gonsalves, the brother of Antonio Gonsalves, and president of Colonial Bakery, as the primary person with whom he dealt at the bakery. John Gonsalves handled all of the financial affairs of the bakery, as well as all of Martel's contacts with Colonial. Despite this close business relationship, John Gonsalves was not called as a witness to corroborate the testimony of Leo Martel. The absence of these people at trial was quite noticeable, and is significant in these deliberations.

To rebut the prima facie case which is normally established by the filing of a proof of claim, Bankruptcy Rule 3001(f); *In re WHET, Inc.*, 33 B.R. 424, 437 (D.Mass.1983), Colonial introduced: (1) copies of checks payable to the order of Seaboard Flour, which contained various notations now claimed to represent the balance due, (Exhibit A–1); (2) photo-copies of various delivery slips, which differ from those submitted by Martel (Exhibits A–3, A–4); (3) a worksheet prepared by Colonial's prior accountant, John Mello, allegedly evidencing payments made to Seaboard in October 1982 (Exhibit A–2); (4) original bounced checks to Seaboard drawn on Colonial's Fleet National Bank account (Exhibit A–5); and (5) photo-copies of payment receipts (Exhibit A–8). Colonial contends that these documents establish that, at most, only $1,400 could still be owed to Seaboard Flour (*see* Debtor's Exhibit A–8, with a notation on the July 27, 1984 receipt that the balance owed is $1600, and two subsequent receipts of $100 each), and that the documents submitted by Martel in support of his claim, in addition to not being adequately authenticated, also are replete with forgeries and alterations that totally destroy their (and his) credibility.

■ The first issue for our consideration is which party bears the burden of proof in the instant dispute. Pursuant to 11 U.S.C. § 502(a), a claim is deemed allowed unless a party in interest objects.[1] The effect of filing a proof of claim pursuant to Bankruptcy Rule 3001(f), is that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Neither Bankruptcy Rule 3001(f), nor Rule 3007 which sets forth the proce-

---

1. 11 U.S.C. § 502(a) provides that:
   (a) A claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under Chapter 7 of this title, objects.

dure for objecting to claims,[2] address the question of who bears the burden of proof on the objection to the claim. Notwithstanding the absence of any statutory guidance, the issue has been considered by other bankruptcy courts. *See, e.g., In re Circle J. Dairy, Inc.,* 92 B.R. 832 (Bankr.W.D. Ark.1988); *In re Twinton Properties Partnership,* 44 B.R. 426 (Bankr.M.D.Tenn. 1984); *In re Simmons,* 765 F.2d 547 (5th Cir.1985). The court in *In re Circle J. Dairy, Inc., supra,* at 833, remarked that "[c]ases which have considered the issue of burden of proof in a hearing on an objection to claim have generally followed the procedure outlined in *California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co., Ltd.),* 837 F.2d 696, 698 (5th Cir. 1988)." That procedure can be summarized as follows: (1) pursuant to Bankruptcy Rule 3001(f), the claimant establishes a prima facie case against the debtor upon the filing of its proof of claim; (2) the objecting party is then required to produce evidence to rebut the claimant's prima facie case; (3) once the objecting party produces such rebuttal evidence, the burden shifts back to the claimant "to produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests upon the claimant...." *In re Circle J. Dairy, Inc., supra,* at 833 (citing *California State Bd. of Equalization, supra* ). *See also In re Twinton Properties Partnership, supra* ("The ultimate burden of persuasion, however, always is vested in the claimant. If the objecting party rebuts the prima facie validity of the proof of claim, the claimant bears the burden of persuasion to prove the validity of the claim by a preponderance of the evidence." *Id.* at 429).

■ In the matter before us, Colonial has produced substantial evidence to rebut Seaboard's prima facie case, including copies of checks written to Seaboard containing various notations which Colonial argues represents the balance due Seaboard at that time. We have no reason to disregard this evidence. In addition, the Court finds definite alterations on several of the delivery slips, which clearly detract from the legitimacy of these invoices. The payment receipts furnished by Colonial, Exhibit A–8, in our opinion, represent the most credible evidence of the actual amount due Seaboard. The receipt dated July 17, 1984 indicates a balance due of $1600. Two more $100 payments were made thereafter, on August 20, and November 20, 1984. Therefore, we find that, at most, $1400 has been established as the amount due Seaboard Flour.

■ Once Colonial rebutted Seaboard's prima facie claim, the burden shifted back to Martel to prove his claim by a preponderance of the evidence. He has fallen far short of doing so. Not only has Martel failed to explain the whereabouts of the ledger sheet, or to present evidence of invoices sent to Colonial, but more importantly, he has failed, without sufficient explanation, to produce key witnesses to substantiate his bizarre version of the facts. "Under the evidentiary rule, the unexplained failure to call any known non-hostile person who has direct knowledge of facts being developed by the party raises the inference that the testimony would be unfavorable or at least would not support the case." *Borror v. Herz,* 666 F.2d 569, 573–574 (C.C.P.A.1981) ("Where ambiguities exist in the record or there is conflicting testimony as to events which an inventor's testimony could clear up, a strong negative inference may be reasonable that his testimony would be unfavorable to his case" *Id.* at 574); *see also Chicago Co. of Ost. Med. v. George A. Fuller, Co.,* 719 F.2d 1335, 1353 (7th Cir.1983); *Tyler v. White,* 811 F.2d 1204, 1207 (8th Cir.1987); *Simon v. C.I.R.,* 830 F.2d 499, 506 (3d Cir.1987); *Matter of Unit, Inc.,* 45 B.R.

---

**2.** Bankruptcy Rule 3007 entitled "Objections to Claims" provides that:

An objection to the allowance of a claim shall be in writing and filed with the Court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor-in-possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

425, 432 (Bankr.S.D.Ohio 1984). Here, Martel's failure to produce the bookkeeper who handled all of the billing between Seaboard Flour and Colonial, creates a strong negative inference that her testimony would not support the claimant's case. Moreover, Martel's failure to call John Gonsalves to explain the method by which business was conducted between the parties, seriously weakens his case, and does not allow a finding that his claim, as filed, has been established by a preponderance of the evidence.

Accordingly, Colonial's objection to claim number 8 of Leo Martel d/b/a Seaboard Flour is, for the most part, SUSTAINED, and said claim is allowed in the amount of $1400.

Enter Judgment accordingly.