In re FRONTIER AIRLINES, INC.; Frontier Leaseco One, Inc.; Frontier Leaseco Two, Inc.; and Frontier Holdings, Inc., Reorganized Debtors.

T.G. SHOWN ASSOCIATES, INC., Appellant,

v.

FRONTIER AIRLINES, INC.; Frontier Leaseco One, Inc.; Frontier Leaseco Two, Inc.; and Frontier Holdings, Inc., Appellees.

No. 89–K–421.
Bankruptcy No. 86–B–8021 E.

United States District Court, D. Colorado.

March 28, 1990.

Jay John Schnell, Denver, Colo., for Frontier Airlines, Inc.

Kathryn L. Schroeder, Denver, Colo., for T.G. Shown.

Michael E. Katch, Katch, Wasserman & Jobin, Denver, Colo., for Official Unsecured Creditors' Committee of Frontier Airlines.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This opinion covers an appeal arising from the Frontier Airlines bankruptcy which was consolidated with Civil Action No. 89–K–1782 for the purpose of oral argument. Since oral argument, the companion case of 89–K–1782 has settled and was dismissed by stipulation. In this case, 89–K–421, T.G. Shown & Associates, Inc. (Shown) argues that the court erred in awarding only $22,000 of the approximately $29 million it claimed against the Frontier estate. It contends that the court should have required Frontier to file a separate objection to its amended claim, that it misconstrued Shown's burden of proof, and that it misapplied Colorado contract law in denying all but a portion of the claim. I affirm.

### I. *Facts.*

Frontier Airlines filed for bankruptcy in August, 1986. At this time, Shown was under contract with Frontier to market Frontier's air freight services. This contract (the Marketing Agreement), which took effect on July 1, 1985, provided for an automatic one-year extension of its terms if Shown met a minimum revenue forecast of $12 million in air freight sales from July 1, 1985, to July 1, 1986. It is undisputed that Shown never reached this goal.[1] Neverthe-

---

1. Shown argued at trial that the $12 million figure had been revised downward during the term of the Marketing Agreement. Shown's evidence, however, was insufficient to establish

less, Frontier continued to use Shown's marketing services after July 1, 1986 (and into August), paying Shown in advance for July.

On July 3, 1986, the parties executed a letter of intent (the Letter Agreement) concerning a transaction by which Frontier was to "farm out" to Shown its entire freight operations. At a meeting with Frontier on July 17, 1986, Shown presented a revision of the Letter Agreement to Larry Martin, Frontier's President. Martin did not execute it, however, because Frontier was about to be sold to United Airlines, and United performed its own freight marketing and operations. The parties continued to negotiate over the "farm out," but they never reached a final agreement on many of the details of the transaction. Martin testified at trial that his intent was simply to continue to use Shown on a month-to-month basis for marketing services pending the closing of Frontier's sale to United. The sale never occurred, however, and Frontier was forced to file for bankruptcy.

On November 24, 1986, Shown filed its Proof of Claim for $220,000 against the Frontier estate. Shown claimed the Marketing Agreement had been extended for a second year (July 1986 to July 1987) and that Frontier owed it $220,000 for services to be performed during that year. On October 1, 1987, Frontier filed its objection to this claim. Shown then obtained new counsel, and filed an Amended Proof of Claim on June 10, 1988. The amended claim was for over $29 million, alleged to be damages for Frontier's breach of the Letter Agreement. On June 16, 1988, Frontier filed a motion to strike the amended claim.

On July 14, 1988, the bankruptcy court denied Frontier's motion to strike, finding that Frontier did not give notice to Shown of the claim bar date. At the hearing on the motion, Shown's counsel questioned whether Frontier would be required to file a formal, written objection to the amended claim. The court responded that "for purposes of the record, the amended claim can be deemed objected to; the basic claim has been. Clearly, the fact that Frontier has filed a motion to strike indicates that the amended claim is objected to as well. So we will take the matter as being at issue." R.Vol. II at 4. Shown's counsel responded, "That's fine." *Id.* at 5.

Frontier then filed two pre-trial motions before the final hearing on Shown's claim. On October 4, 1988, it filed a motion for partial summary judgment. The motion was directed at Shown's argument that the Letter Agreement was a binding contract between the parties. Frontier alleged that, because the Letter Agreement expressly provided that the farm-out of its freight operations was "subject to successful negotiations between Frontier and the labor unions representing Frontier employees involved in cargo terminal operations" and these negotiations never occurred,[2] a condition precedent was not met and there never was a binding agreement between Frontier and Shown. The bankruptcy court declined to rule on the motion before trial; however, it severed the issue of damages and ordered trial to proceed solely on the issue of liability.

On October 28, 1988, Frontier then filed a motion for election of claim, seeking to have Shown choose whether its claim arose under the Marketing Agreement or the Letter Agreement. Frontier's position was that it was inconsistent that both of these agreements were in effect at the same time and that Shown could have a claim under both of them, especially since the Letter Agreement provided that if the farm-out occurred, the Marketing Agreement would cease. The bankruptcy court initially denied the motion on November 3, 1988, but noted on the opening day of trial that Shown's proofs of claim were inconsistent. It ruled that "the claimant [Shown] does

---

that Frontier ever agreed to any reduction in the revenue forecast, and the bankruptcy court found that the $12 million figure was never achieved.

**2.** Frontier's labor agreement with the Air Lines Employees Association (ALEA) provided that the ALEA had the right to approve or reject any proposed farm-out of Frontier's air freight operation.

not have to make an irrevocable election before any evidence is put on concerning the contract under which claims are being asserted, but I think the burden lies on the claimant to go forward and establish which contracts, if any, it has a right to assert a claim under and, therefore, the burden is on Shown to go forward." *Id.* Vol. III at 5.

After approximately three days of trial, the bankruptcy court ruled in Frontier's favor. It held that the Letter Agreement was merely an "agreement to agree" and not a binding contract between the parties, and therefore it could not provide a basis for Shown's claimed $29 million in damages. The court further ruled that the Marketing Agreement had expired by its own terms on July 1, 1986, and that there had been no automatic extension of this contract because Shown had not met the requirement of generating $12 million in revenue during the previous year. Finally, it found that Shown was entitled to a claim for services provided during the month of August, 1986, because the marketing agreement had continued on a month-to-month basis and Shown had provided services during that time. On March 1, 1989, the court entered judgment for Shown for $22,000, after the parties were unable to reach an agreement on the amount due Shown for these services.[3] On March 10, Shown filed its notice of appeal.

## II. *Issues.*

### A. Frontier's Objection to Shown's Claim.

■ Shown's first argument is that Frontier should have been required to file a written objection to Shown's amended claim. Shown contends that Bankruptcy Rule 3007 requires that a specific, written objection be filed and that in the absence of such an objection, Shown's amended claim should have been deemed allowed. Shown also relies on Fed.R.Civ.P. 15, made applicable to bankruptcy adversary proceedings by Bankr.R. 7015. Shown argues that when it filed its amended claim, this rule of

pleading required Frontier to file a new written objection. Shown asserts that this failure "required [Shown] to litigate this matter while blindfolded" and resulted in "trial by ambush." Shown Brief at 7, 8.

Frontier contests Shown's arguments by first noting that it is undisputed that Frontier filed an objection to Shown's original claim. Frontier further points out that Shown did not file a new claim, but an amendment to its original claim and arguably its objection to the original claim was sufficient to put Shown on notice that any claim arising out of the same facts would be disputed. Next, Frontier argues Shown waived any argument on this score because its counsel indicated her agreement to the court's taking the matter at issue without an amended objection. Frontier also disputes that Shown had no notice of Frontier's specific objections to the amended claim when discovery in this matter was extensive and Frontier's trial brief clearly indicated its position. Finally, Frontier argues that Fed.R.Civ.P. 15 does not apply to this action because it was not an adversary proceeding under Section VII of the Bankruptcy Rules.

I think Frontier's arguments are persuasive. I have found no case that addresses whether a party in interest must file a new objection when a creditor files an amended proof of claim, and the parties cite none. Without question, there have been cases in which the trustee has filed an amended objection, *see, e.g., Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*, 106 B.R. 943 (N.D.Tex.1989); *In re McLean Enters., Inc.*, 105 B.R. 928 (Bankr. W.D.Mo.1989), and this certainly would have been the most prudent course. However, there is nothing in the Code or Rules which requires that an amended objection be filed.

■ Shown's reliance on Fed.R.Civ.P. 15(a) and Bankr.R. 7005 as requiring an amended objection is misplaced. Rule 15 is

---

3. After trial on Shown's claim, Frontier filed a Combined Statement Concerning Damages and Motion to Tax Costs and Award Attorneys' Fees. The court granted the motion for sanctions on July 13, 1989. It imposed sanctions on Shown

and its counsel for the amount of Frontier's costs and fees incurred in responding to Shown's amended claim of $28 million, which the court found to be specious.

made applicable only to bankruptcy *adversary proceedings*. This was *not* an adversary proceeding as defined in Bankr.R. 3007 and 7001; it was a "contested matter" as provided in Bankr.R. 9014. As such, Bankr.R. 7015 does not apply unless the bankruptcy court specifically directs that it apply. Bankr.R. 7015; *see also In re Calisoff*, 94 B.R. 1002, 1004 n. 2 (Bankr.N.D.Ill. 1988) (noting that Fed.R.Civ.P. 15 does not apply to contested matters under Bankr.R. 9014). Moreover, the structure of the Bankruptcy Rules indicates that the full spectrum of procedural rules were not intended to apply to non-adversary, contested matters.

■ In this case, it is undisputed that the bankruptcy court did not' order that Bankr.R. 7015 (and thus, Fed.R.Civ.P. 15) would apply to this matter. In fact, when specifically confronted with this issue by Shown's counsel, the court declined to require Frontier to amend its objection. Since there is no requirement in the Code or Rules that such an amendment be made, the bankruptcy court did not err as a matter of law by not requiring such an amendment, nor in denying that Shown's claim should have been "deemed allowed" because no valid objection was lodged. *See* 11 U.S.C. § 502(a) ("[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects"). Likewise, Shown's argument that it was blindsided by the lack of information on the substance of Frontier's objection to its amended claim is patently ridiculous. It was obvious from the beginning that Frontier was contesting any claim by Shown relating to its freight marketing services. Certainly if Frontier objected to Shown's $220,000 claim, Shown could have anticipated an objection to a $29 million claim. It was also obvious that Frontier would focus on whether the Letter Agreement was ever made effective.[4] Therefore, I conclude that there was no error by virtue of Frontier's failure to file

an amended objection to Shown's amended claim.

**B. Burden of Proof.**

■ Shown's next argument is that the court erroneously put the burden of proof on it to come forward with evidence of the validity of its claim. Shown focuses on the court's statement at the commencement of trial, after its consideration of Frontier's pretrial motions, that "the burden lies on [Shown] to go forward and establish which contracts, if any, it has a right to assert a claim under and, therefore, the burden is on Shown to go forward." Again, I disagree with Shown's analysis of this issue.

The Bankruptcy Code and Rules do not specify which party bears the burden of proof in a hearing on an objection to a claim; however, the issue has been considered by several courts. In *California State Board of Equalization v. Official Unsecured Creditors' Committee (In re Fidelity Holding Co.)*, 837 F.2d 696, 698 (5th Cir.1988), the court outlined the shifting burdens of production and persuasion in these circumstances.

> Under Bankruptcy Rule 301(b) [now Bankr.R. 3001(f) ], a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets. The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail. If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to "prove the validity of the claim by a preponderance of the evidence." The ultimate burden of proof always rests on upon the claimant.

*Id.* (citations omitted); *see also In re Colonial Bakery*, 108 B.R. 13 (Bankr.R.I.1989) (cataloguing cases following this approach).

While a literal reading of the judge's comment that Shown had the burden of coming forward would suggest error, tak-

---

**4.** Frontier notes that, in its motion to strike Shown's amended claim, it argued not only that the amendment was untimely, but that the Letter Agreement was not binding. Thus, early in the proceedings, Shown had knowledge of the

essence of Frontier's objection. *See In re Keyworth*, 47 B.R. 966, 971 (D.Colo.1985) (court construed objections to claim contained in debtor's memorandum brief as sufficient written notice of objection under Bankr.R. 3007).

ing the comment in context, it is clear that he correctly applied the parties' burdens in this case. Shown's claim was presumed valid until Frontier filed its pretrial motion to strike, motion for partial summary judgment, and motion for election of claims. In each of these motions, Frontier brought forth evidence bringing into question the validity of the contracts upon which Shown relied for its claim. Thus, taking the court's comment in context, it indicated the view that the burden shifted to Shown at trial to prove the validity of the contracts which Frontier had drawn into question by its various pretrial motions.

█ Even interpreting the court's comment as misconstruing Shown's burden of proof in this case, as a practical matter, no error occurred. At the beginning of trial, Frontier requested its two witnesses be permitted to testify first because they had traveled from out of state. Shown agreed, and the court permitted Frontier to question these witnesses first. Consequently, Shown was not forced to go forward initially with its evidence and was not prejudiced in any way by the court's earlier comment. I conclude that the bankruptcy court's comment on Shown's burden of proof was harmless.

## C. Colorado Contract Law.

█ Shown's final argument regarding the determination of its claim is that the bankruptcy court misconstrued Colorado contract law in holding that the Marketing Agreement had been extended only on a month-to-month basis, that Frontier had terminated the Marketing Agreement in August, 1986, and that the Letter Agreement was merely an "agreement to agree." Although Shown has characterized the court's error as one of law, Shown's arguments relate to the bankruptcy court's findings of fact. Therefore such findings are reversible only if clearly erroneous. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir.1988).

█ First, Shown states that the bankruptcy court found that the Marketing Agreement was modified to a month-to-month arrangement by a letter sent by Frontier's president to Shown. Shown then argues that the court erred in conclud-

ing that "a unilateral offer to modify the [Marketing] Agreement met with the criteria for an effective modification under Colorado law." Shown Brief at 15. Frontier points out that this assertion misinterprets the bankruptcy court's findings and the record below. According to Frontier, the bankruptcy court did not find that the letter constituted a modification to the agreement, but that the parties conduct after the expiration of the Marketing Agreement manifested an intent to continue the arrangement on a month-to-month basis. There is more than adequate evidence to support the bankruptcy court's findings relating to the Marketing Agreement under the clearly erroneous standard.

█ The same conclusion applies to Shown's argument that there was overwhelming evidence that the Letter Agreement was an effective contract and not a mere agreement to agree. Again, Shown's citation to the record is weak; conversely, Frontier cites strong evidence that a meeting of the minds on the farm-out never occurred. For example, the agreement itself was titled "Letter of Intent to Enter into a Contract," and Frontier's president testified (as confirmed by other correspondence introduced at trial) that the agreement was only intended to enable Shown to talk with banks about financing the potential farm-out. The Letter Agreement stated that it covered "areas that we believe should be addressed in the agreement," indicating that a formal agreement was forthcoming. Many specifics of the transaction were not addressed in the Letter Agreement, including the crucial issue of insurance coverage. Finally, no negotiations had ever been commenced with the ALEA to obtain its approval of the farm-out, a prerequisite to the agreement. Consequently, there is more than adequate evidence to support the bankruptcy court's finding that the Letter Agreement was not a binding contract.

The bankruptcy court's ruling is AFFIRMED.