**In re Robert A. PONTARELLI d/b/a Bald Hill Auto Body, Debtor.**

**Bankruptcy No. 93–11484.**

United States Bankruptcy Court, D. Rhode Island.

July 14, 1994.

**500**

Russell D. Raskin, Raskin & Berman, Providence, RI, for debtor.

Charles A. Lovell, Partridge, Snow & Hahn, Providence, RI, for Rhode Island Depositors Economic Protection Corp.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Chapter 13 Trustee.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on June 6 and June 7, 1994 on Debtor's objection to the amended, secured claim of Rhode Island Depositors Economic Protection Corporation ("DEPCO"), in the amount of $98,489. The Debtor objects to the amount of the claim, contending that he made $45,100 in cash payments to Heritage Loan and Investment Company, DEPCO's predecessor-in-interest, and has signed receipts from Heritage's former president, Joseph Mollicone, Jr., evidencing the payments. Based upon the entire record, we find as a

fact and conclude as a matter of law that the Debtor has not met his burden under 11 U.S.C. § 502 and Fed.R.Bankr.P. 3001(f) to rebut DEPCO's prima facie case, and, accordingly, we overrule the Debtor's objection.

### FACTS

On April 29, 1986, Robert Pontarelli borrowed $65,000 from Heritage, and as security he granted a mortgage to Heritage on his residence in Warwick, Rhode Island. Pontarelli alleges that he did not receive a payment book and never knew the balance of the loan because "the numbers would change month to month." He testified, *inter alia*, that he would complain to Joseph Mollicone, Jr., president of Heritage, about the lack of formalities with the loan and that Mollicone always told him "not to worry," and that he "would take care of it."

Despite these and other similar complaints, Pontarelli says he turned to Joe Mollicone again in late 1989, to refinance his various loans and that Joe told him he could get him a secured loan through Fleet National Bank, at more favorable interest rates, provided Pontarelli reduced, by cash, the balance on his loan with Heritage. Pontarelli admits that the arrangement sounded odd, however on the advice of his brother-in-law attorney, Albert Lepore, Esq., he decided that it would be all right to make cash payments, as long as he obtained receipts. The Debtor asserts that five cash payments were made to Heritage through Joe Mollicone, between January 10, 1990 and July 11, 1990, totaling $45,100.

Pontarelli has produced five receipts for the alleged transactions, each purportedly with the signature of Joseph Mollicone, Jr. Handwriting experts for both parties [1] agree, however, that the signatures on all five receipts are forgeries, and not the signature of Joseph Mollicone, Jr. The experts also agree that all five receipts were signed by the same person, neither being the Debtor nor his wife, Rhonda Pontarelli. The experts agreed that the forger either was familiar with Mollicone's signature, or attempted to copy or trace his signature on the subject

---

1. Pauline Patchis testified for the Debtor and Gene Berrie testified for DEPCO.

receipts. DEPCO's expert, Gene Berrie, also testified that the printed typeset on the subject receipts is different from that of blank receipts she had obtained from Heritage, and that the receipts in question differ from other receipts produced earlier by the Debtors.[2]

## DISCUSSION

A properly filed proof of claim is "prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f); *see In re Colonial Bakery, Inc.*, 108 B.R. 13, 14 (Bankr.D.R.I.1989); *In re Narragansett Clothing Co.*, 143 B.R. 582, 583. In *Colonial Bakery*, we considered the procedure regarding objections to claims:

> (1) pursuant to Bankruptcy Rule 3001(f), the claimant establishes a prima facie case against the debtor upon the filing of its proof of claim; (2) the objecting party is then required to produce evidence to rebut the claimant's prima facie case; (3) once the objecting party produces such rebuttal evidence, the burden shifts back to the claimant 'to produce additional evidence to "prove the validity of the claim by a preponderance of the evidence." ' The ultimate burden of proof always rests upon the claimant. . . .

*In re Colonial Bakery*, 108 B.R. at 15 (citing *In re Circle J. Dairy, Inc.*, 92 B.R. 832, 833 (Bankr.W.D.Ark.1985)) (quoting *California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co., Ltd.)*, 837 F.2d 696, 698 (5th Cir.1988)).

■ The Debtor relies heavily on the "empty chair doctrine," arguing that Joseph Mollicone, Jr., would have answered a lot of questions had he been summoned as a witness, and that DEPCO's failure to produce Mr. Mollicone gives rise to the inference that his testimony would have been unfavorable to DEPCO.[3] We rule that Mr. Mollicone was

equally available as a witness to either party. We also understand the reluctance of either DEPCO or the Debtor to incur the expense of producing Mr. Mollicone, only to hear him invoke his Fifth Amendment privilege against self incrimination. Because of that likelihood, we seriously doubt that Mollicone's presence would have added anything of value to this dispute, other than a little sensationalism, and we draw no inferences against either party from his absence.

■ Mr. Pontarelli also urges the Court to accept that his "story" must be true, because he is not sophisticated enough to dream up such a scheme (i.e. obtaining false receipts, having signatures forged, etc.). We find quite the opposite to be the case. We find that Debtor and his wife have the motive, the knowledge, and the inclination to conjure such a scheme. This is evidenced by the Debtor's manipulation of his schedules wherein he lists the value of his personal property as $2,500, and jewelry and furs as $1,000. However, in connection with an alleged fire loss, both the Debtor and his wife signed proof of loss forms indicating values of $250,000 and $100,000, respectively, for the same property, and explained away the discrepancy in the schedules by saying "it must be a typo." Both the Debtor and his wife have prior criminal convictions based upon attempted insurance fraud. Mr. and Mrs. Pontarelli also gave differing accounts as to where they got the cash allegedly given to Mollicone to pay down their Heritage loan. Mrs. Pontarelli, who supposedly made most of these payments, had no specific recollection of any of them. In summary, the Debtor's contention that he made cash payments to Heritage, through its infamous president, is rejected as a fabrication, and in so doing, all questions of credibility are resolved against him.

We find, based on the entire record, that the Debtor has not even presented sufficient

---

2. The Debtors submitted Exhibit 5 at trial, which contained two receipts from Heritage—one dated 1989 and the other 1988. The typeset of these two receipts matched the blank receipts obtained by Gene Berrie from Heritage, but does not match the subject receipts. From this, we find that the five receipt forms produced by the Debtor are not authentic Heritage receipts.

3. This argument presupposes that Mr. Mollicone would have: (1) appeared; (2) testified; (3) told the truth; and (4) waived his Fifth Amendment privilege against self incrimination.

evidence to overcome DEPCO's prima facie case. Alternatively, we find that DEPCO has met its burden of proving its claim by more than a preponderance of the evidence. Accordingly, the Debtor's Objection to DEPCO's claim is OVERRULED, and said claim is allowed as filed.

Enter Judgment consistent with this opinion.